UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-CV-61374-WPD

RAMI ZIYADAT,

    Plaintiff,

vs.

DIAMONDROCK HOSPITALITY
COMPANY d/b/a THE WESTIN
BEACH RESORT FORT LAUDERDALE,

    Defendant.
_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Rami Ziyadat ("Rami") sues Defendant DiamondRock Hospitality Company d/b/a The Westin Beach Resort Fort Lauderdale ("The Westin") and alleges as follows:

## JURISDICTION

1. This action is brought against the Westin pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended.

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

3. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claim because the state claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

4. Further, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (a) Plaintiff and Defendant are citizens of different states; and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

5. Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions complained of took place in this District.

## PARTIES

6. At all times relevant, Rami is and was a citizen of Cook County, Illinois, and over the age of 18.

7. Rami is of Arabic descent and was born in Amman, Jordan.

8. DiamondRock Hospitality Company is a Maryland corporation with its principal place of business and headquarters in Bethesda, Maryland. DiamondRock Hospitality, LLC, is a wholly owned subsidiary of DiamondRock Hospitality Company.

9. DiamondRock Hospitality Company purchased the Westin in 2014 for $149 million. The Westin is an upscale 432-room hotel located on Ft. Lauderdale Beach in Broward County, Florida. The Westin is managed by HEI Hotels and Resorts and boasted an 81.3% occupancy rate in 2018.

## GENERAL ALLEGATIONS

10. On Friday, May 24, 2019, Rami and his fiancé Taylor Schneider ("Taylor") checked in to the Westin and settled in their room overlooking the Atlantic Ocean, greatly excited for their 8-night romantic getaway.

11. Room 1039 was booked solely in Rami's name.

12. Rami's features, complexion, and appearance revealed to the Westin, as well as the public at-large, that he is of Arabic Descent.

13. On information and belief, and at all times material hereto, the Westin knew that Rami was Arab based upon his outward features, complexion, and appearance.

14. On Tuesday, May 28, 2019, Rami and Taylor headed down to the pool area to catch

2 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

a tan and enjoy the sun.

15. They stopped and ordered a drink at the pool bar—a watermelon mojito and a margarita, respectively. The bartender asked Rami and Taylor for their room number to open a tab and they responded that they were staying in 1039 north.

16. They then headed towards the area behind the pool which afforded them more privacy and laid on the lounge chairs tanning.

17. After a little while, Rami and Taylor decided to go for a swim and moved all of their belongings to a chair by the pool. Rami headed over to get Taylor some water which was by the table with towels.

18. As Rami approached the table, Judy, the woman attending the towels, began looking Rami up and down and glaring at him, staring at the Arabic words tattoos on his arm. Any objective person would recognize the writing as Arabic.

19. Below, is a picture of Rami's arm depicting the Arabic tattoo that Judy was fixated upon.



20. Aside from the Arabic wording tattooed on his shoulder, Rami has the complexion and look of a man of Arabic descent, including facial hair. Any objective person would reasonably know simply by looking at Rami that he was of Arab descent.

21. Rami got the water and headed back to Taylor and upon sitting down—noticed that

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Judy was still staring at him and following him with her eyes.

22. Rami and Taylor enjoyed a few minutes in the pool and got out to dry off. They looked up and saw Judy who immediately said to Rami, "You don't look like you belong here. What are you doing here?"

23. Judy acted pleasantly and cordially with the other white patrons at the pool that day. Not so with Rami.

24. Judy simply had no reason to act towards Rami the way she did other than her intentional discrimination against Rami because of his Arab descent. Rami did nothing to offend or in any way bother Judy. In fact, Rami was pleasant and smiled at Judy as he did with the other Westin staff.

25. The only relevant thing different about Rami from all of the other guests at the pool that afternoon was that Rami was the only hotel guest that visibly looked Arabic and had Arabic writing tattooed on his arm. None of the other guests were questioned or treated the way Rami was.

26. Rami explained that he and Taylor were guests there and asked Judy what she meant by him "not looking like he belonged there".

27. Judy's only response was that she was calling security.

28. Shocked, dismayed, and hurt, Rami and Taylor immediately went to the front desk and asked to speak to the manager. They were told that Robert Munn—Assistant Director of Front Office—was in charge but that he was in a meeting. Rami said they would wait for Robert.

29. Rami was so hurt, he just wanted to wait for the manager. When Robert finished his meeting, Rami and Taylor explained what had happened. Robert then told them they should go back and enjoy the pool and that he would be right out to speak with Judy.

4 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

30. As Robert was speaking with Rami and Taylor at the front desk, upon information and belief, Robert's wife and children arrived in the lobby waiting for Robert.

31. Robert instructed the woman behind the counter to issue vouchers to Rami and Taylor and went to hug his children. As Robert scooped his little boy in his arms, Rami and Taylor headed back out to the pool.

32. Rami and Taylor went back to the pool and tried to relax and enjoy. However, they could do neither as Judy had called security and there were two men staring and watching them.

33. One of those men, Reynier Valdes, spoke with Judy and got her version of what happened and reported back to Robert what Judy had said.

34. Judy also told Reynier Valdes that Rami had vomited in the pool, another complete fabrication used to disguise her racial animus for Rami.

35. After a little while passed and Robert still had not come out, Rami and Taylor were feeling quite uncomfortable and unwelcome and decided to head out to explore the Everglades.

36. They went up to their room and prepared to head out. As they were getting ready to leave, there was a knock on their door.

37. As they opened the door, Robert was there with the manager and the head of security. Rami and Taylor were sure Robert was there to apologize again and try and make things right.

38. To their shock and horror, Robert told them they were being evicted and that they had 15 minutes to leave or he would call the police.

39. Rami could not understand why he was being treated this way. Taylor began looking around for cameras, thinking she was on a hidden camera show and the butt of a prank.

40. As the reality dawned on Rami and Taylor, they kept asking what they had done.

5 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208

Robert would only say they were being "inappropriate" and "violated the hotel policy." Taylor asked to see the policy, but Robert refused.

41.     Rami and Taylor repeatedly asked Robert what they had done inappropriately or in violation of hotel policy, but Robert simply had no idea and could not tell them.

42.     Robert was just parroting what he had heard from Judy either independently or through Reynier Valdes.

43.     Upon information and belief, neither Robert nor any other manager undertook any independent investigation into Judy's story and merely accepted as true what Judy said.

44.     Upon information and belief, Robert was too preoccupied with his wife and children to question Judy, despite hearing a completely contradictory story from Rami.

45.     Westin management could easily have reviewed surveillance footage to corroborate Judy's story but did not do so[1].

46.     Outraged and humiliated, Rami and Taylor demanded a refund for the remaining days which was refused by Robert.

47.     To this day, Rami and Taylor have no idea what they did wrong other than they were being "inappropriate" and "violated the hotel policy." This is simply false. Nothing could be further from the truth. This was merely an excuse to provide a pretext for the Westin's discriminatory actions.

48.     To be clear, Rami and Taylor did not in any way act inappropriately and did not in

---

[1] It must be noted that at 2:53 pm on May 30, 2019—within 48 hours of the subject incident—the Westin received via facsimile (and by certified mail on June 5, 2019) a preservation letter requesting that it "take possession of any and all surveillance video from 9:00 a.m. to 5:00 p.m. on May 28, 2019 […]." Yet, in response to Plaintiff's First Request for Production seeking all relevant surveillance videos— the Westin supplied only *two videos*. Neither of the videos shows any "inappropriate" behavior by Rami or Taylor and neither video shows any investigation into Judy's story.

6 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

any way violate the hotel policy. This was simply a fabrication by the Westin.

49. Rami and Taylor were then marched out of the hotel flanked by security and subjected to incredible humiliation as other hotel guests stared at the couple surrounded by security.

50. All conditions precedent to the filing of this action have occurred.

### COUNT I
### VIOLATION OF § 1981

51. Rami repeats, realleges and incorporates by reference paragraphs 1-50 as though fully stated herein.

52. "The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."[2]

53. As a Jordanian Arab, Rami is members of a "racial minority" as the term has been construed by the Supreme Court and Eleventh Circuit within the context of § 1981.

54. At all times material, the Westin knew Rami was Arab and the Westin intentionally discriminated against Rami on this basis. As stated above, the Westin wrongfully prohibited Rami from finishing up the vacation they had paid for.

55. The Westin, by canceling Rami's reservation and refusing to refund the money paid, wrongfully denied Rami the right to make and enforce a contract under which he had rights.

56. Rami had an absolute unqualified right to be treated equally by the Westin; however, because Rami is Arab, the Westin intentionally discriminated against Rami. In so doing, the Westin denied Rami his right to make and enforce contracts on the same terms as enjoyed by

---

[2] *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted).

8 | P a g e

white persons in violation of 42 U.S.C. § 1981.

57. The Westin is liable for the actions of its employees under the doctrine of *respondeat superior.*

58. As a direct and proximate result of the discriminatory conduct of the Westin, Rami has suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award of compensatory damages and punitive damages, according to proof, from the Westin.

59. As a result of the deprivations of rights at the hands of the Westin, Rami has retained Rodal Law, P.A., and has agreed to pay Rodal Law, P.A., a reasonable fee. Rami is entitled to recover these reasonable fees from the Westin pursuant to 42 U.S.C. § 1988(b) and otherwise by law.

**WHEREFORE**, Plaintiff RAMI ZIYADAT, demands judgment against DIAMONDROCK HOSPITALITY COMPANY d/b/a THE WESTIN BEACH RESORT FORT LAUDERDALE for the above damages, attorney's fees and costs pursuant to 42 U.S.C. 1988(b) and for such further relief as this Court deems just and equitable.

### *COUNT II*
### BREACH OF CONTRACT

60. Rami repeats, realleges and incorporates by reference paragraphs 3-11, 37-38, and 46-50 as though fully stated herein.

61. Rami contracted with the Westin for a stay of 8 nights and had prepaid for same. A copy of same is attached hereto as Exhibit "A."

62. The Westin breached said contract by evicting Rami in middle of his stay.

63. Moreover, the Westin refused to refund any portion of the money Rami paid.

64. The Westin, by and through its employees, essentially threw Rami out on the street

8 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

9 | P a g e

with 15 minutes warning and refused to refund his money. Rami had no choice but to pay another hotel for the remainder of their stay.

**WHEREFORE**, Plaintiff, Rami Ziyadat, demands judgment against DiamondRock Hospitality Company d/b/a The Westin Beach Resort Fort Lauderdale for damages, including punitive, and for such further relief as this Court deems proper.

*COUNT III*
**DEFAMATION**

65. Rami repeats, realleges and incorporates by reference paragraphs 3-11, 22, 33-34, 40, and 47-50 as though fully stated herein.

66. The Westin, by and through its employee Judy, defamed Rami by stating that Rami looked like he did not belong at the Westin. This statement was heard by other Westin employees and other guests

67. Judy also told Reynier Valdes that Rami had acted inappropriately; had attempted to remove Taylor's bikini top in the pool area around children; had used profane language; had engaged in sexually inappropriate conduct with his girlfriend with other guests, including children, present; had vomited in the pool; and that Rami had violated hotel policy. Each of these statements is untrue and was said with the deliberate attempt to cause injury to Rami borne of a racial animus and dislike for rami simply because he is an Arab.

68. Reynier Valdes then repeated these statements to Robert and other Westin employees.

69. Robert then repeated to Rami that Rami had been acting inappropriately and that he had violated hotel policy. These statements were overheard by Taylor, Reynier Valdes, and Xavier Etcheberrigaray.

70. The above statements were false and defamatory and had the natural tendency to

injure the personal reputation and credibility of Rami.

53. The statements lacked good faith and were made intentionally and maliciously with the intent to injure and harm Rami. The statements did in fact cause Rami emotional distress, as well as personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment.

**WHEREFORE**, Plaintiff, Rami Ziyadat, demands judgment against DiamondRock Hospitality Company d/b/a The Westin Beach Resort Fort Lauderdale for the above damages, including punitive, and for such further relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff, Rami Ziyadat, respectfully demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Yechezkel Rodal
Yechezkel Rodal, Esq.
Florida Bar No. 91210
E-mail:chezky@rodallaw.com
Kristen D. Montgomery, Esq.
Florida Bar No. 1003495
E-mail: kristen@Rodallaw.com
RODAL LAW, P.A.
5300 N.W. 33rd Ave., Suite 219
Fort Lauderdale, Florida 33309
Phone: (954) 367-5308

*Counsel for Plaintiff*

10 | P a g e
Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Fort Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

11 | P a g e

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on September 26, 2019 with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Stephen Hunter Johnson, Esq.
LYDECKER | DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
Email: shj@lydeckerdiaz.com

*Counsel for Defendant*

Service by CM/ECF

                Rodal Law, P.A.
                *Counsel for Plaintiff*
                5300 N.W. 33rd Ave., Ste. 219
                Ft. Lauderdale, Florida 33309
                Telephone: (954) 367-5308
                Facsimile:  (954) 900-1208

                */s/Yechezkel Rodal*
                Yechezkel Rodal, Esq.
                Florida Bar No. 91210
                chezky@rodallaw.com